# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP UK LIMITED, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL ACTION 24-0086-WS-B ) |
| EATON CORPORATION, et al., | ) ) |
| Defendants. | ) ) |

## ORDER

This declaratory judgment action was recently removed on the basis of diversity of citizenship. (Doc. 1). "The burden of establishing removal jurisdiction rests with the defendant seeking removal." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013); *accord Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017).

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Because, "once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue," it "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). In compliance with this directive, the Court conducted an initial review and was unable to confirm its subject matter jurisdiction. The Court identified its concerns and provided the defendants an opportunity to submit whatever supplemental material they deemed appropriate and sufficient to carry their burden of establishing the existence of subject matter jurisdiction. (Doc. 4). The defendants have done so, (Doc. 11), but the Court remains unpersuaded.

## DISCUSSION

The complaint was filed in state court by thirteen artificial entities. (Doc. 1-1 at 5-10). One plaintiff ("RSA") is alleged to be the owner of a certain property that was damaged by fire. The other twelve plaintiffs are alleged to have provided property insurance to RSA. The plaintiffs suffered damages just south of $260,000. The complaint alleges that the fire resulted from a failed compressor within the HVAC unit and that the defendants designed, manufactured, marketed, and placed in the stream of commerce the HVAC unit and/or the compressor. The complaint asserts claims against the defendants under the Alabama Extended Manufacturers Liability Doctrine.

### A. Diversity of Citizenship.

The defendants are two domestic corporations, and their citizenship (Ohio, Delaware, and Massachusetts) has been properly alleged in compliance with 28 U.S.C. § 1332(c)(1). The plaintiffs consist of a hodgepodge of artificial entities, all of which the defendants in their notice of removal treated as corporations. The Court was unable to confirm that all the plaintiffs are corporations, and it offered the defendants an opportunity to clarify their entity status and to demonstrate their citizenship by other means should they prove not to be corporations.

By the defendants' own insistence, plaintiff Aegis Syndicate 1225 "is an insurance syndicate at Lloyd's of London." (Doc. 1 at 5). "Syndicates in the Lloyd's market have no independent legal identities, but are merely creatures of administrative convenience." *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1088-89 (11th Cir. 2010) (internal quotes omitted). These syndicates "fall squarely within the class of unincorporated associations for which the pleading of every member's citizenship is essential to establishing diversity jurisdiction." *Id*. at 1088. The Court cited *Osting-Schwinn* in its order inviting the defendants to bolster their showing of diversity jurisdiction. (Doc. 4 at 1).[1] Instead of addressing Aegis Syndicate 1225's

---

[1] Plaintiffs' counsel also reminded the defendants that "the presence of Lloyd's entities may have implications on diversity jurisdiction." (Doc. 11-1 at 7).

citizenship under the correct legal standard, the defendants simply and erroneously insist, without explanation, that this entity is a "compan[y]" the citizenship of which is governed by Section 1332(c)(1).  (Doc. 11 at 3).[2]

Other plaintiffs are designated as "Limited" but appear to be managing agents for syndicates.[3]  According to *Osting-Schwinn*, a managing agent "may or may not be [a] corporation[n]" but in either case "is merely a fiduciary with no financial stake."  613 F.3d at 1083, 1089.  "Early in its history, this Court established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."  *Navarro Savings Association v. Lee*, 446 U.S. 458, 460 (1980).  "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  *Id*. at 461.  For example, a trustee named as a plaintiff is not the real party in interest if it is "merely a conduit for a remedy flowing to others," in which case it is the citizenship of the non-party beneficiaries that governs the jurisdictional inquiry.  *CityPlace Retail, LLC v. Wells Fargo Bank N.A*., 2021 WL 3486168 at *4 (11th Cir. 2021); *accord Flylux, LLC v. Aerovias de Mexico, S.A*., 618 Fed. Appx. 574, 577, 579 (11th Cir. 2015) (where the plaintiff travel agent "was merely acting as an agent for its [non-party] clients," the lower court "correctly examined the citizenship of [the] clients, the real parties in interest").  The defendants have failed to address whether the managing agent plaintiffs are the real parties in interest and, if not, where the citizenship of the syndicate members lies.  *See National Union Fire Insurance Co. v. Siemens Energy, Inc*., 2013 WL 3323182 at *3 (S.D. Tex. 2013) (questioning whether a managing agent could be a proper plaintiff).

---

[2] The defendants also confirm that the members of a plaintiff domestic limited liability company include a syndicate and certain underwriters at Lloyd's, (Doc. 11-1 at 7), but they do not address the citizenship of these entities and/or persons.

[3] These plaintiffs most clearly include W.R. Berkeley Syndicate Management Limited and Dale Managing Agency Limited "for and on behalf of Syndicate 1729."  (Doc. 1-1 at 5).

Of the four domestic plaintiffs, the defendants have adequately shown the citizenship of only one.  The defendants have not addressed the citizenship of Ace American Insurance Company in any fashion.  They acknowledge that Velocity Risk Underwriters ("Velocity") is a limited liability company, but they do not trace its citizenship through that of its members, even though the Court in its previous order pointed them to *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020 (11th Cir. 2004).  (Doc. 4 at 1).[4]  As to RSA, the defendants rely exclusively on the allegations of the complaint, (Doc. 1 at 7; Doc. 11 at 2), but that pleading asserts only that RSA "is organized pursuant to the laws of the State of Alabama and has its principal place of business in the State of Alabama."  (Doc. 1-1 at 6).  In stark contrast with the immediately following paragraphs describing the defendants, the complaint does not allege that RSA "is a corporation" and, without that status, its place of organization or principal place of business is jurisdictionally irrelevant.[5]

In summary, the defendants have invoked federal diversity jurisdiction but, despite two opportunities to do so, they have neither negated the existence or other real parties in interest nor addressed all the named plaintiffs' citizenship utilizing the proper legal standard, despite the Court having identified the relevant standards for them.  The defendants therefore have failed to meet their burden of demonstrating the existence of subject matter jurisdiction, and the case must be remanded for lack of same.

The defendants offer a series of related arguments to stave off this result.  First, they assert that the plaintiffs "[a]t this stage … do not contest diversity jurisdiction."  (Doc. 11 at 1).  However, "[s]ubject matter jurisdiction cannot be created by the consent of the parties."  *Rodriguez v. Branch Banking & Trust Co.*, 46 F.4th 1247, 1256 (11th Cir. 2022) (internal quotes omitted).

---

[4] The defendants instead argue that Velocity was fraudulently joined, (Doc. 1 at 5-7), which would obviate consideration of its citizenship.

[5] In similar fashion, the defendants incorrectly identified the citizenship of Velocity, a limited liability company, as that of its state of organization and principal place of business. (Doc. 1 at 5).

Second, the defendants "submi[t] that the Court should maintain jurisdiction" "[u]ntil there is clear evidence that the Court does not have jurisdiction." (Doc. 11 at 2). That is not how the process works. As noted previously, the Court is obligated to investigate its jurisdiction "at the earliest possible stage in the proceedings." *University of South Alabama*, 168 F.3d at 410. Once it "finds that it does not have subject matter jurisdiction, the court's sole remaining act is to dismiss [or remand] the case for lack of jurisdiction." *Guevara v. Republic of Peru*, 468 F.3d 1289, 1305 (11th Cir. 2006) (internal quotes omitted). A removing defendants' failure to establish the existence of subject matter jurisdiction is the event that requires remand, not the presentation of evidence affirmatively negating such jurisdiction, and a court encountering the former has no power to retain the case pending the latter.

Third, the defendants insist that their failure to establish the existence of complete diversity is a mere procedural defect that they must be given an opportunity to cure. (Doc. 11 at 2). It is true that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," 28 U.S.C. § 1653, and it is true that, pursuant to this provision, "[i]f a party fails to specifically allege citizenship in their notice of removal, the district court should allow that party to cure the omission …." *Corporate Management Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1297 (11th Cir. 2009) (internal quotes omitted). This principle, however, applies only "where subject matter jurisdiction exists" and the problem is merely an inartful pleading of such jurisdiction. *Id*. (internal quotes omitted). Such was the case in *Artjen*, which involved an allegation of an individual party's residency rather than his citizenship. *Id*. at 1295. This is a common error and generally does not establish the absence of diversity, since the state of a person's residence is typically the state of his citizenship.[6] This case, in contrast, does not involve an easily corrected error in a jurisdictional allegation where

---

[6] "[A] natural person is a citizen of the state in which he is 'domiciled.'" *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021). "[D]omicile (or citizenship) consists of two elements: residency in a state and intent to remain in that state." *Id*.

x
x

diversity clearly exists; it involves instead a failure to address citizenship at all under the governing standards. Even could this situation fall within Section 1653, the defendants have been given an opportunity to cure but, instead of addressing citizenship under the governing standards identified to them by the Court, they have elected to stand on their initial, inadequate allegations. (Doc. 11 at 1).

Finally, the defendants seek "additional time to obtain additional information from the Plaintiffs through discovery or otherwise." (Doc. 11 at 1). This is not permissible. "Post-removal discovery for the purpose of establishing jurisdiction in diversity cases cannot be squared with the delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and underlie them." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1215 (11th Cir. 2007).

**B. Amount in Controversy.**

Although the complaint alleges almost $260,000 in damages, (Doc. 1-1 at 8), the Court pointed out that the defendants had demonstrated neither that any single plaintiff's damages exceed the jurisdictional threshold of $75,000 nor that this is a case in which the aggregation of multiple plaintiffs' claims is permissible. (Doc. 4 at 2). *See Morrison v. Allstate Indemnity Co.*, 328 F.3d 1255, 1262 (11th Cir. 2000) (satisfying the amount-in-controversy requirement requires either that a "single plaintiff's claim" does so or that "multiple plaintiffs have a unified, indivisible interest in some common fund that is the object of the litigation, permitting them to add together, or 'aggregate,' their individual stakes to reach the amount in controversy threshold").

The defendants have no evidence that any single plaintiff has experienced over $75,000 in damages, and they offer no reason even to suspect such a situation.[7] Instead,

---

[7] The defendants assume that RSA may be seeking to recover some uninsured damages, (Doc. 11 at 8), but the complaint alleges no such loss; instead, the entire $260,000 loss is attributed to insurance payments. (Doc. 1-1 at 8). For any of the twelve insurance-related plaintiffs (or the underlying real parties in interest) to have paid over $75,000 of the loss, they must have insured over 28.9% of the $260,000 loss. The defendants' own submission reflects

6

they argue that the face of the complaint does not itself rule out such a possibility, and they ask the Court for time in which to investigate who paid what. (Doc. 11 at 9). For reasons set forth in the preceding section, the request cannot be, and will not be, granted.

The defendants focus their argument on the possibility of aggregating the claims of multiple plaintiffs. "[W]hen several plaintiffs unite to enforce a single title or right, in which they have a *common and undivided interest*, it is enough if their interests collectively equal the jurisdictional amount." *Friedman v. New York Life Insurance Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) (emphasis in original, internal quotes omitted). Such a situation "is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs as a group and not to the individuals severally." *Id*.

The defendants identify the following points of commonality: all plaintiffs seek to recover damages from a "single loss" to a "single insured" due to a "single fire," based on "the same legal theories" and "represented by the same attorney." (Doc. 11 at 6, 8). All these circumstances exist, but none is relevant to whether the plaintiffs share a "common and undivided *interest*." Several binding cases, among them the following, indicate they do not.

In *Friedman*, the named plaintiff and putative class members sought reimbursement for premium overpayments. The Court ruled the plaintiffs' claims could not be aggregated because: (1) "[e]ach plaintiff could have brought a separate suit"; (2) "each plaintiff will recover precisely the amount of his or her overpayment (whether in the same or different amounts) without any effect on the right of co-plaintiffs"; and (3) there was no common fund, but "rather, each plaintiff seeks only reimbursement of the amount he or she overpaid in premiums." 410 F.3d at 1354. All these circumstances are

---

that Velocity (through four carriers) insured 7.5% of the risk ($19,500) and that the Bermudian plaintiff insured 5.5% ($14,300), (Doc. 11-1 at 7), indicating that the risk was spread far too thin to leave any of the other ten insurance-related plaintiffs (or the underlying real parties in interest) holding a $75,000 bag.

present here: no common fund is involved,[8] each plaintiff could have brought suit separately, each "seeks to recover [only] the amount of the loss it suffered," (Doc. 11 at 8), and each plaintiff's recovery has no effect on the rights of any other plaintiff.[9]

"More specifically, when multiple plaintiffs assert rights arising from individual insurance policies, their claims are separate and distinct, and accordingly, may not be aggregated." *Morrison*, 228 F.3d at 1264. The plaintiffs in *Morrison* were insureds, but the same rule applies when the plaintiffs are insurers: "The facts that the three insurance companies issued identical policies, except as to amounts, and that each policy contained a contributing clause and limited its participation to a certain percentage of the whole do not make the companies jointly liable." *Niagara Fire Insurance Co. v. Dyess Furniture Co.*, 292 F.2d 232, 233 (5th Cir. 1961) (rejecting aggregation of the insurers' claims to establish the amount in controversy).

In *Eagle Star Insurance Co. v. Maltes*, 313 F.2d 778 (5th Cir. 1963), the Court observed that "the Supreme Court has evinced a desire to give a strict construction to allegations of the jurisdictional amount in controversy, so as to allow aggregation only in those situations where there is not only a common fund from which the plaintiffs seek relief, but where the plaintiffs also have a joint interest in that fund, such that if plaintiffs' rights are not affected by the rights of co-plaintiffs then there can be no aggregation." *Id*. at 781. Under this standard, three plaintiffs injured by the defendants' insured in a single

---

[8] For jurisdictional purposes, a "common fund" does not mean the mere creation of a pot of money out of which claims are to be satisfied. It refers instead to a classic common fund situation, such as those involving land, estates, or trust funds, in which the claimants "claim as common owners or in which they share a common interest arising under a single title or right." *Friedman*, 410 F.3d at 1353-54 (internal quotes omitted).

[9] In a classic common fund situation, where aggregation may be allowed, "one plaintiff's decision to drop his or her claim results in that plaintiff's share being divided up among the remaining claimants. Conversely, the addition of new plaintiffs results in a proportionate reduction of the original claimants' share of the pie." *Friedman*, 410 F.3d at 1356 n.4. In contrast, because the insurance-related plaintiffs allocated their individual shares of the risk, should a plaintiff drop out, the remaining plaintiffs could not recover a dime more or a nickel less, which means that no plaintiff's recovery has any impact on the rights of other plaintiffs.

motor vehicle accident could not aggregate the value of their judgments against the insured in their suit against the insurer to enforce the judgments. *Id*. at 779, 781-82. *Eagle Star* is binding precedent,[10] and its quoted proposition was reaffirmed in *Friedman*, 410 F.3d at 1353, and in *Morrison*, 228 F.3d at 1263.

"Several liability is fundamental to the Lloyd's structure …." *Osting-Schwinn*, 613 F.3d at 1091. "Accordingly, each underwriter has an independent stake in the insurance contract that stands apart from the liabilities of the other underwriters of the contract." *Id*. at 1092. Several liability is incompatible with aggregation:

> "It is well settled in this court that when two or more plaintiffs, *having several interests*, unite for the convenience of litigation in a single suit, it can only be sustained in the court of original jurisdiction, or on appeal in this court, as to those whose claims exceed the jurisdictional amount; and that when two or more defendants are sued by the same plaintiff in one suit *the test of jurisdiction is the joint or several character of the liability* to the plaintiff."

*Zahn v. International Paper Co*., 414 U.S. 291, 294 n.3 (1973) (emphasis added) (quoting *Walters v. Northeastern Railroad Co*., 147 U.S. 370, 373 (1893)). Thus, for example, the claims of multiple members of a Lloyd's syndicate cannot be aggregated to reach the jurisdictional threshold. *E.g., E.R. Squibb & Sons, Inc. v. Accident & Casualty Insurance Co*., 160 F.3d 925, 933 (2nd Cir. 1998).[11] Some of the plaintiffs, and some of the non-party real parties in interest, are Lloyd's syndicates, and even those that are not likewise claim only several interests.

The inevitable tug of all these cases is that the plaintiffs' claims cannot be aggregated in order to sustain jurisdiction. The defendants address none of these

---

[10] *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit …, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit.").

[11] "[T]he fact that the several liability of the [members] derives from a single insurance policy does not alter the jurisdictional analysis." *Id*.

9

authorities, even though the Court cited both *Morrison* and *Osting-Schwinn* in its previous order.[12]  Instead, the defendants rely exclusively on *Honey v. George Hyman Construction Co.*, 63 F.R.D. 443 (D.D.C. 1974), gleaning from it the proposition that an insurer and its insured have a common and undivided interest when the insurer sues a tortfeasor to recover payments made to its insured and the insured in the same action sues the tortfeasor to recover its uninsured losses.  (Doc. 11 at 7-8).  Assuming for purposes of argument only that this is a correct proposition of law, such that the defendants could aggregate the amount sought by RSA with the amount sought by one of the insurance-related plaintiffs, it does not aid the defendants.  As discussed in note 7, *supra*, the complaint reflects that the entire amount of damages sought consists of insurance payments, leaving nothing in the way of uninsured losses to be recovered by RSA.  Even if it be supposed that RSA, due to its presence as a plaintiff, must be seeking some recovery of uninsured losses, the defendants offer no clue as to its probable magnitude.[13]

It is the defendants' burden to prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs.  *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).  They may do so either by showing that such an amount in controversy is facially apparent from the complaint itself or by offering evidence beyond the pleading reflecting that the threshold is attained.  *Id*.  The complaint obviously does not reflect that any single plaintiff is seeking over $75,000.  The defendants have failed to show that the several claims of the insurance-related plaintiffs can be aggregated to reach the jurisdictional threshold, and they have likewise failed to show that RSA's claimed damages (if any), combined with those of any single other plaintiff, reach that threshold amount.

---

[12] The defendants attempt to limit the Eleventh Circuit's aggregation rules to the class action context, (Doc. 11 at 7), but they are mistaken.  Of the Eleventh Circuit cases discussed in text, only *Friedman* and *Morrison* involved a class action.

[13] To the uncertain extent the defendants suggest that *Honey* allows aggregation of multiple insurers' several claims, the Court rejects the suggestion, both because it does not read *Honey* for that proposition and because such a proposition would be in conflict with the binding cases discussed in text.

## CONCLUSION

For the reasons set forth above, this action is **remanded** to the Circuit Court of Mobile County for lack of subject matter jurisdiction.

DONE and ORDERED this 16th day of April, 2024.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE